UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANIMAL LEGAL DEFENSE FUND,
    Plaintiff

v.

HORMEL FOODS CORPORATION,
    Defendant

Civil Action No. 16-1575 (CKK)

MEMORANDUM OPINION
(April 5, 2017)

    Plaintiff Animal Legal Defense Fund ("ALDF") filed suit against Defendant meat producer Hormel Foods Corporation ("Hormel") in the Superior Court of the District of Columbia, alleging that Defendant violated the District of Columbia Consumer Protection Procedures Act ("DCCPPA") by misleading consumers with its "Natural Choice" advertising campaign. In short, Plaintiff's Complaint claims that Hormel's meat products are not "natural" in the way that its advertising campaign implies. Defendant removed the case to this Court, invoking the Court's federal question, diversity and Class Action Fairness Act ("CAFA") jurisdiction. Plaintiff has moved to remand the case back to Superior Court. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will GRANT Plaintiff's [15] Motion to Remand.

    Remand is required because the Court lacks subject matter jurisdiction. First, the Court lacks federal question jurisdiction because Plaintiff asserts only a single cause of action under

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction ("Pl.'s Mot."), ECF No. 15;
- Def.'s Opp'n to Pl.'s Mot. to Remand ("Def.'s Opp'n"), ECF No. 17; and
- Pl.'s Reply in Support of Mot. to Remand ("Pl.'s Reply"), ECF No. 18.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

District of Columbia law, and the Court rejects Defendant's argument that Plaintiff's Complaint nonetheless "necessarily raises" federal issues.  Second, the Court finds that it lacks diversity jurisdiction because Defendant has not demonstrated that $75,000 is in controversy in this case.  The Court does not deem it appropriate to measure the amount in controversy as the total cost to the Defendant of complying with the requested injunctive relief and is also not convinced that speculation as to possible attorneys' fees is sufficient to establish jurisdiction.  Finally, the Court lacks class action jurisdiction under CAFA because this case is not a class action.

## I. BACKGROUND

Plaintiff is a non-profit organization that focuses on animal protection issues.  Compl., ECF No. 1-1, ¶¶ 28-30.  Plaintiff brought this suit in the Superior Court of the District of Columbia, alleging that Defendant Hormel misleads consumers in Washington D.C. when it sells them meat products pursuant to a "Make the Natural Choice" marketing campaign that suggests that Defendant's products are "natural" when in fact they are not.  *Id.* ¶¶ 1-23.  Based on these and other alleged misrepresentations Plaintiff asserts a cause of action under the DCCPPA.  *Id.* ¶¶ 211-26.  As relief, Plaintiff seeks a declaration that Hormel's conduct is in violation of the DCCPPA, an order enjoining such conduct and requiring corrective advertising, and attorneys' fees, costs and pre-judgment interest.  *Id.* at 41-42.

After this Complaint was filed in the Superior Court of the District of Columbia, Defendant removed it to this Court, invoking the Court's federal question, diversity and CAFA jurisdiction.  Notice of Removal, ECF No. 1.  Defendant then filed in this Court a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 11.  Before it was required to respond to that Motion, Plaintiff filed the pending Motion to Remand for Lack of Subject Matter Jurisdiction.

ECF No. 15.  The Court then stayed briefing on Defendant's Motion to Dismiss pending the resolution of Plaintiff's Motion to Remand. [2]  Plaintiff's Motion is now fully briefed and ripe for resolution.

## II. LEGAL STANDARD

The Court of Appeals for the District of Columbia Circuit has explained that "[w]hen it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court *must* remand the case." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (emphasis added).  Because removal implicates significant federalism concerns, a court must "strictly construe[ ] the scope of its removal jurisdiction." *Downey v. Ambassador Devel., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941)).  "'[I]f federal jurisdiction is doubtful, a remand to state court is necessary.'"  *Id.* (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)); *see also Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) ("Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand.").  "The party seeking removal of an action bears the burden of proving that jurisdiction exists in federal court." *Downey*, 568 F. Supp. 2d at 30.  If the party "cannot meet this burden, the court must remand the case." *Johnson-Brown*, 257 F. Supp. 2d at 177.

## III. DISCUSSION

Defendant presents three different theories by which it contends that this Court has subject matter jurisdiction over this case.  First, Defendant invokes the Court's federal question

---

[2] Defendant's [11] Motion to Dismiss the Complaint and accompanying [12] Request for Judicial Notice will be HELD IN ABEYANCE for the Superior Court to resolve on remand.

jurisdiction because Defendant claims that despite the fact that this case arises under District of Columbia law, it necessarily raises federal issues.  Second, Defendant asserts that the Court has diversity jurisdiction because the parties are of diverse citizenship and the cost of complying with the requested injunction, plus the attorneys' fees at issue, exceeds $75,000.  Finally, Defendant asserts that the Court has jurisdiction under CAFA.  The Court is not convinced by any of these arguments, and accordingly it must remand this case back to Superior Court.

### A.  Federal Question Jurisdiction

First, the Court rejects Defendant's contention that federal question jurisdiction exists over this action.  Federal question jurisdiction grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The scope of this jurisdiction is defined by the well-pleaded complaint rule, which states that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  No such federal issue appears on the face of Plaintiff's Complaint.  Plaintiff does not assert a federal cause of action, nor does it otherwise rely on federal law in any way.  Because no federal issue appears on the face of Plaintiff's well-pleaded Complaint, federal question jurisdiction does not exist in this case.

Defendant seeks to avoid this result by invoking a narrow doctrine whereby cases brought under state law may be heard in federal court if they "necessarily raise" certain federal issues.  In *Gunn v. Minton*, the Supreme Court explained that "even where a claim finds its origins in state rather than federal law," there exists "a 'special and small category' of cases in which arising under jurisdiction still lies."  133 S. Ct. 1059, 1064 (2013).  The Court in *Gunn* stated that this "special and small category" is comprised of cases where "a federal issue is: (1)

necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065 (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)).

Defendant attempts to bring this case under the doctrine discussed in *Gunn* by claiming that "Plaintiff's CPPA claims necessarily challenge" a "federal scheme." Def.'s Opp'n at 41. Defendant asserts that "[a] comprehensive national regulatory system governs nearly every aspect of meat and poultry production, including the various practices directly challenged in Plaintiff's lawsuit" and that the United States Department of Agriculture "has issued specific guidance on use of 'natural' and 'no preservative' claims, and [the Food Safety and Inspection Service] has specifically approved Hormel Foods' use of those claims to describe the Natural Choice products at issue." *Id.* at 40. According to Defendant, "[t]he Complaint thus calls into question the scope and validity of federal law governing meat and poultry products." *Id.* at 41.

This argument fails at the first step of the *Gunn* analysis because it does not demonstrate that a federal issue is "necessarily raised" by Plaintiff's claims. First, despite Defendant's rather extreme statement that Plaintiff's claims are an "attempt to subvert the federal system of regulation," *id.* at 42, it is not at all clear that there is any real conflict between the false advertising claims in this case and the federal laws Defendant cites. Defendant has directed the Court to certain federal laws and regulations related to meat *labelling* and *packaging*. But this case is not about the labels or packages on particular meat products produced by Defendant. It is about a national *advertising* campaign including, among other things, magazine advertisements, newspaper inserts and webpages. The federal laws and regulations cited by Defendant may grant Defendant the right to use various terms on its meat labels—when accompanied by certain disclaimers—but they do not appear to have given Defendant any sort of approval to produce the

5

*advertisements* challenged in this case. Nor has Defendant pointed to any federal law that would permit advertisements for meat products simply because those advertisements contain pictures of federally-approved meat labels or contain phrases similar to those found on such labels, as Defendant argues is the case here. Moreover, the Court is not convinced that the fact that Defendant's treatment of animals is, allegedly, in compliance with certain federal laws means that the challenged advertisements could not be misleading with respect to how such treatment is portrayed. As Plaintiff persuasively argues in its Reply, the Complaint in this case does not allege that Defendant's treatment of animals is necessarily *illegal*. Pl.'s Reply at 24. It merely alleges that such treatment is misleadingly portrayed. For all of these reasons, the Court does not agree that Plaintiff's advertising claims are inherently in conflict with the federal laws relied on by Defendant.

Second, even if some degree of conflict did exist between Plaintiff's claims and the federal laws cited, jurisdiction under *Gunn* would still not be appropriate because this is not a case where the resolution of Plaintiff's claims would "necessarily require application of [federal] law to the facts of [Plaintiff's] case." *Gunn*, 133 S. Ct. at 1065. In *Gunn*, "the Court found that application of patent law was a necessary part of a legal malpractice claim brought by a plaintiff, who was the losing party in a prior patent infringement action, since the plaintiff would have to show that he would have prevailed if his prior counsel had timely made a particular patent law argument on his behalf." *Millepede Mktg. Ltd. v. Harsley*, 928 F. Supp. 2d 109, 116 (D.D.C. 2013). The situation here is fundamentally different. Unlike in *Gunn*, where application of federal patent law was necessary to resolve plaintiff's legal malpractice claim, it is not necessary to apply any federal laws or regulations to resolve Plaintiff's DCCPPA claims. Instead, these federal laws would constitute, if anything, a *defense* that Defendant may choose to present.

In fact, Defendant has raised precisely such a defense, based on federal preemption and its compliance with these federal laws, in its pending Motion to Dismiss Plaintiff's Complaint. But such a defense by its very nature is not "necessarily raised" by Plaintiff's Complaint, and indeed it is black letter law that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Caterpillar Inc.*, 482 U.S. at 393. Indeed, Defendant concedes that the defense of preemption that it has raised in its pending Motion to Dismiss "is insufficient to demonstrate the existence of a substantial federal question for purposes of jurisdiction." Def.'s Opp'n at 40 n.16.

With regard to this latter point, the Court notes that Plaintiff has filed a Notice of Supplemental Authority—to which Defendant has responded—bringing to the Court's attention a recent opinion issued by Judge Ellen Segal Huvelle that deals with a very similar argument. In *Organic Consumers Ass'n v. Gen. Mills, Inc.*, No. 1:16-CV-1921-ESH, 2017 WL 706168 (D.D.C. Feb. 22, 2017), plaintiffs brought suit in the Superior Court of the District of Columbia against Defendant General Mills alleging that, among other things, the defendant's labelling and advertising of a certain product containing the terms "healthy" and "natural" violated the DCCPPA. *Id.* at *1. Defendant removed the case, invoking federal question jurisdiction, and Judge Huvelle granted plaintiffs' motion to remand. *Id.* Defendant argued that challenges to its use of these terms would necessarily raise federal issues because there were potential conflicts between plaintiffs' positions in the case and certain federal regulations or policies. *Id.* at *5-7. Judge Huvelle rejected these arguments because, to the extent such a conflict did exist, it "would be a defense, not a basis for federal question jurisdiction." *Id.* at *6. As discussed above, the Court agrees with this reasoning. As in *Organic Consumers*, the conflict asserted by Defendant

in this case is not of the type that "necessarily raises" a federal issue, but is instead more properly viewed as a federal defense that is insufficient to create jurisdiction.

Having determined that no federal issue is necessarily raised by Plaintiff's Complaint, the Court need not consider the additional requirements for invoking federal question jurisdiction under *Gunn*. Because no federal issue appears on the face of Plaintiff's Complaint and Plaintiff's claims do not necessarily raise any federal issues, the Court does not have federal question jurisdiction over this action.

## B. Diversity Jurisdiction

Defendant also contends that this Court has diversity jurisdiction over this action because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Plaintiff does not dispute that the parties are diverse, but contends that Defendant has not demonstrated an amount in controversy exceeding $75,000. The Court agrees.

Defendant argues that the amount in controversy requirement is satisfied based on (1) the cost to Defendant of complying with the requested injunctive relief and (2) the attorneys' fees Plaintiff requests in its Complaint. For the reasons set forth below, neither are sufficient to demonstrate that $75,000 is in controversy.

### 1. The Cost of Complying with the Requested Injunction

The Court first finds that the purported cost of complying with the injunctive relief Plaintiff requests is not sufficient to satisfy the amount in controversy requirement. The Court begins by noting that it rejects Plaintiff's argument that Defendant's "alleged cost of compliance . . . is no longer considered a proper measure of jurisdictional minimum in district courts in this Circuit." Pl.'s Mot. at 8. Under binding precedent, the cost-to-defendant test is in fact one appropriate method of measuring the value of injunctive relief in this Circuit. In *Tatum v. Laird*

the Court of Appeals for the District of Columbia Circuit held that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce," and determined that the amount in controversy requirement was satisfied in that case because "the cost to the [defendant] of complying with such a [injunction] might well exceed $10,000."  444 F.2d 947, 951, n.6 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972).  After *Tatum*, the Court of Appeals and district courts of this Circuit have repeatedly followed this rule.  *See Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) ("a court may look either to the value of the right that plaintiff seeks to enforce or to protect or to the cost to the defendants to remedy the alleged denial.") (quotations omitted); *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472 (D.C. Cir. 1975) ("the amount in controversy may be measured either by the 'value of the right sought to be gained by the plaintiff or the cost of enforcing that right to the defendant'") (quoting *Tatum*, 444 F.2d at 951); *Breathe DC v. Santa Fe Nat. Tobacco Co.*, No. CV 16-2378 (ESH), 2017 WL 521513, at *4 (D.D.C. Feb. 8, 2017) ("This Court must follow Circuit precedent, and thus it will consider the cost of the injunction to defendants").  The Court follows this precedent and concludes that the cost-to-defendant test remains an appropriate measure of the amount in controversy in this Circuit.

However, although the cost to the defendant is one available measure of the amount in controversy, the Court concludes that it would not be an appropriate measure to apply in this particular case because to do so would not comport with the non-aggregation principle.  That principle states that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement."  *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *see also Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973) ("multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit

9

in the federal courts"). This principle can conflict with the cost-to-defendant test because Defendant's compliance with an injunction may resolve the separate and distinct claims of many individuals. In such a case, considering the total cost of that compliance would, in essence, "aggregate" the value of all of those claims. The Court of Appeals has recognized this "possible conflict" between the non-aggregation principle and "the rule which allows the jurisdictional amount to be based on the cost to the defendant of proposed relief," but has "not attempt[ed] to resolve" it. *Fenster v. Schneider*, 636 F.2d 765, 767 n.1 (D.C. Cir. 1980).

In the absence of binding precedent on this issue, the Court is persuaded by several district court opinions from this Circuit that have considered this conflict in the context of cases brought under the DCCPPA on behalf of the general public seeking injunctive relief and have determined that considering the *total* cost to the Defendant of complying with that relief would violate the non-aggregation principle. These courts have instead found that the cost of compliance that a court should consider when determining the amount in controversy is the total amount divided among the beneficiaries of the injunction. *See Breathe DC*, 2017 WL 521513, at *6 (in a DCCPPA case seeking injunctive relief, holding that "to determine the amount in controversy from the defendants' perspective, the cost of compliance must be divided among the beneficiaries of the injunction" because considering "their total compliance costs in calculating the amount in controversy would circumvent the non-aggregation principle"); *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015) ("Defendants' argument—that this Court should consider their total compliance costs in calculating the amount in controversy—would circumvent the non-aggregation principle articulated in *Snyder* and *Zahn*."); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105 (D.D.C. 2008) (finding that "the cost-to-defendant test is inapplicable to the current diversity action" where plaintiff sought injunctive relief under the

DCCPPA because it "'would undermine the holdings of *Zahn* and *Snyder*.'") (quoting *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 612 F. Supp. 100, 108 (D.D.C. 1985)). The Court will follow this approach as it is both logical and consistent with "the longstanding directive that federal jurisdiction should be strictly interpreted." *Breakman*, 545 F. Supp. 2d at 105; *see also Nat'l Org. for Women*, 612 F. Supp. at 105 ("this court is to construe its diversity jurisdiction narrowly").

Having determined that Defendant's total cost of complying with the requested injunction in this case is not a proper measure of the amount in controversy, Defendant's showing necessarily fails. In support of removal, Defendant has provided the declaration of its Vice President of Meat Products Marketing, Steven J. Venenga, who avers that Defendant's cost of compliance would involve three components: corrective advertisements, the production of new packaging and the production of new advertisements. Decl. of Steven J. Venenga, ECF No. 17-1, at ¶¶ 11-38. According to Mr. Venenga, these costs would add up to approximately $5,440,000. *Id.* at ¶ 10. Although this total estimated cost far exceeds the $75,000 minimum, Defendant has made no effort to demonstrate—nor could it credibly—that the cost of the injunction divided pro rata among the members of the general public of Washington, D.C. would exceed the jurisdictional threshold.

Instead of attempting to make such a showing, Defendant has argued that the non-aggregation principle is inapplicable here for a number of reasons, none of which the Court finds persuasive. First, Defendant argues that the non-aggregation principle can have no application in a case with only a single Plaintiff. Def.'s Opp'n at 11-13, 16. The Court disagrees. ALDF is the only Plaintiff named in this case, but it asserts that it brings this case on behalf of the general public. In other words, Plaintiff is bringing this case on behalf of other individuals who would

themselves have separate and distinct claims against Defendant, and who would themselves benefit from the injunctive relief sought.  The Court finds that although the non-aggregation principle was originally established in cases involving multiple formal *plaintiffs*, "the rationale [behind the principle] extends equally to actions," like the one before the Court, "brought by nonprofit groups where the beneficiaries need not be added as parties to the lawsuit."  *Breathe DC*, 2017 WL 521513, at *6.

Second, the Court also rejects Defendant's alternative argument that Plaintiff has not, in fact, brought this case on behalf of the general public.  Defendant argues that the "text of the Plaintiff's Complaint" does not support the conclusion that Plaintiff seeks to represent the "general public."  Def.'s Opp'n at 3.  The Court has reviewed the entirety of Plaintiff's Complaint and concludes that there are sufficient allegations to demonstrate that Plaintiff intended to bring this claim on behalf of the general public.  In its Complaint, Plaintiff invokes D.C. Code § 28-3905(k)(1)(C), which states that "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf *and on behalf of the general public*, bring an action . . . ," and alleges that, through this D.C. Code section, the DCCPPA "allows for non-profit organizational standing to the fullest extend recognized by the D.C. Court of Appeals."  Compl. ¶¶ 223-24 (emphasis added).  The Complaint also contains numerous allegations that suggest it is being brought on behalf of the general public.  *Id.* ¶ 2 ("consumers are increasingly factoring into their purchasing decisions the origins of their food"); ¶ 22 ("Hormel [is] taking advantage of consumers' perceptions of what 'natural' means"); ¶ 210 ("The products do not have the characteristics, ingredients, benefits, standards, qualities or grades that consumers expect and rely upon, and Hormel never intended to sell them as advertised.").  At most there may be ambiguity on this issue, but any such ambiguity must be resolved in favor of remand.  *See*

*Johnson-Brown*, 257 F. Supp. 2d at 177 ("Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand.").

Finally, the Court is not convinced by Defendant's argument that non-aggregation concerns are irrelevant because the injunctive relief sought would cost Defendant the same amount regardless of the number of beneficiaries. Def.'s Opp'n at 17-21. Even if the Court accepted this premise as factually accurate, it would not inherently alleviate the aggregation problem because it does not address the central aggregation concern. The key question courts consider with respect to aggregation is not whether an injunction would cost Defendant more or less depending on the number of beneficiaries, but instead whether Plaintiff and the members of the general public have separate and distinct claims that could be brought independently against Defendant with respect to the challenged conduct. Because this is the case here, the Court concludes that considering the total cost to Defendant of complying with the requested injunction would raise aggregation concerns. *See Breathe DC*, 2017 WL 521513, at *6 (rejecting similar argument because "this is not a case where no member of the 'general public' could enforce the right at issue in the absence of the others."); *Witte*, 104 F. Supp. 3d at 6 (finding that aggregation concerns were present because "[d]efendants do not dispute that plaintiff and the members of the public he represents have separate and distinct claims for relief against defendants"); *Breakman*, 545 F. Supp. 2d at 106 (where defendant argued that "it would need to create and integrate new price plans into its existing billing systems if it were enjoined," still finding that the relevant compliance cost was "the cost running to each District of Columbia consumer" because each had separate and distinct claim against defendant).

In sum, the Court will not calculate the amount in controversy as the total cost to the Defendant of complying with the requested injunction due to the non-aggregation principle, and

13

Defendant makes no effort to demonstrate that the pro rata portion of its compliance costs attributable to Plaintiff would nearly approach the jurisdictional threshold.

### 2. Attorneys' Fees

The Court is also not convinced that any potential award of attorneys' fees in this case is sufficient to satisfy the amount in controversy requirement. "Attorney fees are part of the amount in controversy if they are provided for by statute or contract," *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013), and the DCCPPA undisputedly does provide for attorneys' fees, D.C. Code § 28-3905(k)(2)(B). Nonetheless, the Court determines that potential attorneys' fees in this particular case are not sufficient to establish jurisdiction.

As an initial matter, Plaintiff argues that it would be inappropriate for the Court to consider the *total* amount of potential attorneys' fees for the same reason that it would be inappropriate to consider the *total* cost of Defendant's compliance with the requested injunction. Plaintiff argues that considering the total amount of attorneys' fees in a DCCPPA case brought on behalf of the general public would not comport with the non-aggregation principle. Pl.'s Mot. at 9. This position finds considerable support in a number of district court opinions from this Circuit. *See Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 73 (D.D.C. 2014) (noting that district courts in this Circuit have "reject[ed] the usual aggregation of statutory attorneys' fees and include them only on a pro rata basis."); *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010) ("aggregation of attorneys' fees is not appropriate in a CPPA case"); *Breakman*, 545 F. Supp. 2d at 107 ("the non-aggregation principle logically should extend to claims of attorneys' fees"). Based on this case law, because Defendant has not attempted to show that the pro rata amount of attorneys' fees that would be attributable to

Plaintiff as a member of the general public would exceed $75,000, Defendant's showing is insufficient at the threshold.

The Court does not, however, rest its conclusion that attorneys' fees are an insufficient basis on which to establish jurisdiction solely on aggregation concerns. Even if the Court were to consider the *total* amount of possible attorneys' fees, it would still find that Defendant had not satisfied the amount in controversy requirement because Defendant's showing regarding attorneys' fees is too speculative. Numerous courts have rejected similar attempts to create federal jurisdiction through speculative assertions as to the potential for an award of attorneys' fees. *See Bimbo Bakeries*, 46 F. Supp. 3d at 74 ("The Court could only speculate as to the eventual cost of this litigation. As such, including attorneys' fees in the jurisdictional calculus here is not appropriate."); *Breakman*, 545 F. Supp. 2d at 107 (finding that attorneys' fees were not sufficient to establish that $75,000 was in controversy because defendant's "argument relating to the amount recoverable is based on pure conjecture."); *Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. CIV.A. 06-0385 (ESH), 2006 WL 1028959, at *2 (D.D.C. Apr. 18, 2006) ("defendant's conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction in this case").

Defendant has attempted to overcome the speculative nature of potential attorneys' fees in this case by cobbling together a "blended billing rate of Plaintiff's lawyers" from filings it has found in other cases, calculating how many hours of work at that average billing rate it would take to reach $75,000, and then baldly asserting that "Plaintiff's attorneys will assuredly spend at least that much time on this case prior to judgment." Def.'s Opp'n at 26. Defendant also claims that it "strains credulity" to suggest Plaintiff would seek less than $75,000 in attorneys' fees. *Id.* These statements are not helpful to the Court. Conclusory assertions and rhetoric are not

sufficient to satisfy Defendant's burden to establish the amount in controversy in this case. *See Gen. Mills, Inc.*, 680 F. Supp. 2d at 140 (rejecting similar estimation of attorneys' fees as that suggested by Defendant in this case because "this kind of conclusory guesswork about potential attorneys' fees is too speculative."). Recognizing that the Court must strictly construe its removal jurisdiction, the Court concludes that any potential award of attorneys' fees is too speculative to satisfy the amount in controversy requirement here.

Having determined that the alleged cost to the Defendant of complying with the requested injunction and the potential attorneys' fees in this case are not sufficient to satisfy Defendant's burden to establish that $75,000 is in controversy, the Court must conclude that it does not have diversity jurisdiction over this matter.

## C.  CAFA Jurisdiction

Finally, Defendant alternatively contends that the Court should consider this lawsuit a "class action" over which it has jurisdiction pursuant to CAFA. Def.'s Opp'n at 27-28. "CAFA gives federal courts jurisdiction over certain class actions . . . if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart*, 135 S. Ct. at 552.

Plaintiff argues that CAFA jurisdiction is absent here for two reasons. First, Plaintiff argues that Defendant has not carried its burden of demonstrating that $5 million is in controversy. The amount in controversy requirement of CAFA is not affected by the non-aggregation principle discussed above because the CAFA statute expressly allows for aggregation. 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"). Accordingly, Plaintiff does not contend that it

would be inappropriate to consider the cost to Defendant of complying with the requested injunction when calculating the amount in controversy in this context. *See* Pl.'s Reply at 20 n.12 ("arguments related to whether the Court can consider the cost-to-defendant of the injunctive relief requested do not apply"). That being said, the parties do dispute whether Defendant would need to spend $5 million to comply with the injunctive relief requested in this case. Pl.'s Mot. at 10-11; Def.'s Opp'n at 38-39; Pl.'s Reply. at 20.[3]

The Court need not resolve the parties' dispute on this issue, however, because class action jurisdiction under CAFA is absent here for a much more fundamental reason: Plaintiff has not brought this case as a class action. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The present case does not fit this definition. Plaintiff did not bring this case under District of Columbia Superior Court Rule of Civil Procedure 23, but instead under D.C. Code § 28-3905(k)(1)(C), which states that "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District . . . " This D.C. Code section does not require class proceedings and is a "separate and distinct procedural vehicle from a class action," to which CAFA does not apply. *Breakman*, 545 F. Supp. 2d at 101; *see also Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 36 (D.D.C. 2014) ("removal is not permitted under CAFA's class action provision for actions brought by a private attorney general under D.C. Code § 28–3905(k)(1) where plaintiff has not

---

[3] As was the case with respect to diversity jurisdiction, Plaintiff does not appear to dispute that the diversity of citizenship requirement of the CAFA statute is satisfied here.

brought a 'class action' under D.C. Superior Court Rule 23."); *Zuckman*, 958 F. Supp. 2d at 306 ("Because Zuckman did not file this action as a class action, his claim falls outside CAFA pursuant to its plain text."); *Gen. Mills*, 680 F. Supp. 2d at 139 (finding that defendant was not able to remove the case under CAFA because "at least for CPPA claims brought on behalf of the general public as here, plaintiffs need not comply with Rule 23").

Defendant resists this conclusion by arguing that the line of authority supporting it is "surely limit[ed], if not outright invalidate[d]" by the District of Columbia Court of Appeals' recent opinion *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980 (D.C. 2015). Def.'s Opp'n at 37. In *Rotunda*, the plaintiff had brought suit in Superior Court under the DCCPPA for damages on behalf of himself and the general public. *Id.* at 982. Plaintiff sought actual or statutory damages for every member of the general public who had been victimized by Defendant's allegedly deceptive price quoting practce. *Id.* Plaintiff disclaimed any intention to seek class certification, and on that basis the trial court dismissed the representative portion of his suit. *Id.* The trial court determined that an action for damages under the DCCPPA on behalf of the general public must comply with Superior Court Rule of Civil Procedure 23 and be certified as a class action. *Id.* The District of Columbia Court of Appeals affirmed. It concluded that due to "the unique challenges to procedural fairness and administration posed by a representative suit for damages," the "necessary vehicle for suits seeking class-wide damages remains Rule 23." *Id.* at 989.

*Rotunda* does not alter the Court's conclusion in this case. The concerns raised by the District of Columbia Court of Appeals in *Rotunda* related to suits for damages, not for the type of injunctive relief sought here, and that court *repeatedly* described its holding as limited to such suits. *See, e.g.*, *id.* at 985 (expressing concern that the DCCPPA amendments at issue "were virtually silent on how broadly-contoured actions for *damages* are to be regulated or managed.")

(emphasis added); *id.* at 988 (finding that Rule 23 is "the time-tested framework [for] suits for *damages* by class-members 'as representative parties'") (emphasis added); *id.* at 989 ("the necessary vehicle for suits seeking class-wide *damages* remains Rule 23") (emphasis added). The decision says nothing about DCCPPA lawsuits that do not seek damages on behalf of the general public, such as the one before the Court.

Apparently recognizing this, Defendant argues that the "concerns that motivated the Court of Appeals" are similarly applicable to suits for injunctive relief, and invites the Court to extend the *Rotunda* decision to such suits on that basis. Def.'s Opp'n at 31-34. But this argument misses the point. Whether or not this Court would deem it prudent for D.C. law to require DCCPPA suits for injunctive relief be considered class actions that must comply with Rule 23 is irrelevant. What is relevant is that the *Rotunda* opinion undeniably does *not* require that. Accordingly, because Plaintiff did not bring its case as a class action, and Defendant has not shown that any D.C. law or court opinion would require Plaintiff's case be treated as such, the Court sees no reason why it would conclude that Plaintiff has brought a "class action" for the purposes of CAFA. Class action jurisdiction under CAFA accordingly does not apply in this case seeking injunctive relief.

Finally, the Court notes that finding that this case is not a class action for the purposes of CAFA is not in conflict with the Court's conclusion that the non-aggregation principle makes it inappropriate for the Court to consider the total cost to the Defendant of complying with the requested injunction when calculating the amount in controversy for the purposes of diversity jurisdiction. Defendant suggests that these two conclusions "cannot be squared" and allow Plaintiff to "have it both ways." Def.'s Opp'n at 29. Although Defendant's position may have some intuitive appeal, it conflates what are in fact two distinct inquiries. Considering the total

cost of complying with the requested injunction is inappropriate because doing so effectively aggregates separate and distinct claims that each member of the general public has against Defendant regarding the challenged conduct.  Finding that CAFA jurisdiction does not apply is simply a matter of determining that Plaintiff has not brought this case as a class action.  These two determinations are not inherently in conflict.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's [15] Motion to Remand for lack of subject matter jurisdiction.  Defendant has not demonstrated that the Court has federal question, diversity or CAFA jurisdiction.

An appropriate Order accompanies this Memorandum Opinion.

Dated: April 5, 2017

                                                  /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge

---

[4] The Court does not base its conclusion that Defendant has failed to establish diversity or CAFA jurisdiction on Defendant's alleged failure to establish the amount in controversy required for either type of jurisdiction in its Notice of Removal.  The Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and evidence establishing the amount in controversy can be provided later "when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  Defendant's failure to provide evidence regarding the amount in controversy with its Notice of Removal was not, therefore, fatal to its effort to remove this case in the first instance.